STATE EX REL. W. L. ALDEN AND OTHERS v. L. P. BLOOM
AND OTHERS.[1]

July 21, 1922.

No. 23,066.

White Bear Lake charter construed—council authorized to call special election for mayor.

1. The provisions of the home rule charter, of the city of White Bear Lake, adopted October 11, 1921, to take effect 30 days thereafter, that the officers of the village continue to govern the municipality until the first Tuesday in April, and to make provision for the election of the first mayor, city council and other officers, on the first Tuesday after the first Monday in March, authorized the council to call a special election for the election of the first mayor.

Canvass of votes—mandamus proper.

2. Mandamus is the proper procedure to compel a canvass of the returns of a special election and to declare the result thereof.

Upon the relation of W. L. Alden and others the district court for Ramsey county granted its alternative writ of mandamus directed to L. P. Bloom and others, members of the city council, acting mayor and acting city clerk of the city of White Bear Lake to canvass the returns of a certain special election and issue a certificate of election to the person shown to be elected by such canvass. Relators moved for judgment on the pleadings and respondents moved to quash the writ. The motion of relators was granted, Sanborn, J. From the judgment entered pursuant to the order for judgment, respondents appealed. Affirmed.

*G. H. Van Harvey* and *Butler, Mitchell & Doherty*, for appellants.

*Cowern & Jesmer* and *Christofferson, Walsh, Christofferson & Jackson*, for respondents.

QUINN, J.

The village of White Bear Lake was organized under chapter 49, p. 296, Special Laws 1881. It had for its governing body a presi-

[1]Reported in 189 N. W. 582.

dent and common council, endowed with the usual powers. On October 11, 1921, the citizens adopted a home rule charter under the corporate name of the "City of White Bear Lake," pursuant to section 36, article 4 of the state Constitution, to take effect on November 10. The charter provided that the village officers should continue in office and govern the municipality until the first Tuesday in April, 1922, when the city officers to be elected as therein provided should assume control. It further provided that the common council so holding over, should make such financial and other provisions for the fiscal year 1922, as would serve to carry on the government until the new regime on the first Tuesday after the first Monday in March, 1922, of the first mayor, city council and other officers.

An election was called for March 7, at which Earl T. Jackson and Peter Fournelle were candidates for the office of mayor. Each received the same number of votes, and it was declared that no choice had been had, whereupon the council called a special election for March 30 to elect a mayor. The same men were again candidates, and Jackson received a majority of all votes cast. Being advised that the calling of the special election was unauthorized, the council refused to canvass the returns and declare the result. By the present action relators seek to compel by mandamus a canvass of the returns and to have the result thereof declared. The trial court granted relator's motion for judgment on the pleadings and a stipulation of facts. Judgment was so entered, from which this appeal was taken.

Section 9 of the charter provides that special elections may be called by the council whenever in its opinion it becomes necessary or advisable, and section 23 gives the council power to appoint, in the event of the death, resignation or removal, of the mayor from office. The election of a mayor had failed at the general election through no fault of the council. A special election could be called, held and the result declared before the day on which the new city officials were to assume control of the government as provided in the charter. The acting council manifestly deemed such a course advisable and accordingly called the special election, thereby allow-

ing the citizens to choose their own mayor as was the intent of the charter. The omission could have been supplied at that time in no other manner. The new regime was to begin on April 4, four days after the time set for the special election. We think the council was within its power and acted properly in calling the special election. It was in keeping with the spirit of the home rule charter, to provide for an election at which the first mayor might be chosen by the electors for the full term of three years.

Had the council canvassed the returns and declared the result, mandamus might not have been the proper procedure in determining title to the office, but otherwise where the only result sought is to compel a canvass of the votes and have the result declared. The calling of the special election being warranted under the provisions of the charter and the outgoing council having failed to canvass the returns thereof, it became the duty of the incoming council to complete the unfinished task, canvass the returns and declare the result. The charter nowhere specifies what procedure shall be pursued in case of a tie vote at any election. It was the clear intent of the charter that, when the term of the holdover officials expired on April 4, there should be a full set of city officers to take over the affairs of the municipality. While the charter provides for the filling of the vacancy of the office by appointment, in the event of the death, resignation or removal of the mayor from office, no such contingency is involved in the case under consideration. There was no vacancy, the election of the first mayor only was involved. We think the judgment appealed from should be sustained.

Affirmed.